UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                          :
LINDA CONNELL                             :
                                          :     CASE NO. 3:06-CV-2128
            Petitioner,                   :
                                          :
vs.                                       :     OPINION & ORDER
                                          :     [Resolving Doc. Nos. 1, 5, 15, 20 & 21.]
PAT ANDREWS, WARDEN                       :
                                          :
            Respondent.                   :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On September 1, 2006, Petitioner Linda Connell filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] With her petition, Connell seeks relief from the judgment and sentence that an Ohio state court imposed following her conviction on one count of involuntary manslaughter with a gun specification. [*Id.*] Respondent Warden Pat Andrews opposes the petition. [Doc. 5.]

On January 30, 2009, Magistrate Judge James S. Gallas filed a Report and Recommendation that recommended the Court deny the Petitioner's writ. [Doc. 15.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 20.] For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Connell's petition for a writ of habeas corpus.

### I. Background

In this habeas action, Petitioner Linda Connell challenges the constitutionality of her

Case No. 3:06-CV-2128
Gwin, J.

conviction by an Ohio state court under the Sixth and Fourteenth Amendments. The Petitioner claims that the trial court usurped the role of the jury by imposing a non-minimum sentence based upon findings of fact that were not determined by a jury or admitted by the Petitioner. [Doc. 1.] Further, the Petitioner argues that her appellate counsel was ineffective because he failed to raise this issue on appeal. [*Id.*]

On June 10, 2002, a Huron County Grand Jury returned an indictment charging the Petitioner with one count of aggravated murder in violation of Ohio Revised Code ("R.C.") § 2903.01(A) with a three-year firearm specification under R.C. § 2941.145. [Doc. 5, Ex. A.]

This charge arose from an incident that occurred on May 18, 2002. *See State v. Connell*, No. H-03-026, 2005 WL 1492058, ¶ 8 (Ohio Ct. App. June 24, 2005). Linda and Alexander Connell had been married for approximately ten years. *Id.* ¶ 5. Their marriage had become strained and both Linda and Alexander "consulted with divorce attorneys, arranged for a residential real estate appraisal of their home, and were laying the groundwork to end their marriage. By the middle of May 2002, a divorce filing appeared imminent." *Id.*

On the morning of May 17, 2002, Linda Connell called a friend, Ernie Thomas, and "asked if [Connell] could bring a gun to [Thomas's] residence and do target practice." *Id.* Although Thomas did not know this at the time, Linda Connell "had previously sought permission to [conduct] target practice [at Thomas's home] from [Thomas's] roommate, Debbie Gornek[, who was also one of Linda Connell's friends.]" *Id.* ¶ 6. Gornek, a state corrections officer with specialized training regarding weapons, declined the request. *Id.* "[K]nowing her friend was struggling with marital stress, [Gornek] advised Linda Connell not to have a gun in her possession and [even offered] . . . to store [Linda Connell's] gun. *Id.*

Case No. 3:06-CV-2128
Gwin, J.

On the afternoon of May 17, 2002, Linda Connell called Thomas from her cell phone and reiterated her desire to come over to his residence for target practice. *Id.* ¶ 7. "A short time later, [Linda Connell] arrived [at Thomas's residence] with a gun and a plastic bowl of bullets. [Thomas] then set up an impromptu shooting range for [Connell] in the back yard. [Thomas] placed a piece of plywood against a tree stump for [Linda Connell's] use and she began to shoot at the target." *Id.*

The next day, May 18, 2002, both Linda and Alexander Connell were at home. Some time before 9:20 a.m., Linda Connell shot her husband twice – once in the face and once in the chest – at close range with a .22 caliber Colt revolver. *Id.* ¶ 8. Linda Connell did not call for emergency medical services and, shortly after he was shot, Alexander Connell died. *Id.* Linda Connell covered Alexander Connell's body with a quilt and left him upstairs. *Id.* At approximately 9:20 a.m., Nick Gaudiello, Alexander Connell's coworker, "arrived at the Connell residence, along with his four-year-old son. [Linda Connell] was drinking a cup of coffee and casually chatted with her dead husband's co-worker. [She] informed [Gaudiello] that Alexander [Connell] was not home and had gone out to assist a relative with car trouble." *Id.* ¶ 9.

Linda Connell remained at home with her husband's concealed body for most of the day on May 18, 2002. *Id.* ¶ 10. During this time, she "drafted a lengthy letter of apology to various family members and friends for having killed her husband. Finally, during the early evening, [Linda Connell] drove to the Huron County Sheriff's Department, told a deputy that she wanted to report a 'domestic violence' and turned in the gun." *Id.* ¶ 10.

Following Linda Connell's report, the Huron County Sheriff's Department and the Huron County Coroner responded to the Connell residence and discovered Alexander Connell's body. *Id.* ¶ 11. After an investigation, the authorities concluded that the cause of death of Alexander Connell

Case No. 3:06-CV-2128
Gwin, J.

was "homicide." *Id.*

Linda Connell was indicted for the aggravated murder of her husband on June 10, 2002. [Doc. 5, Ex. A.] At her arraignment on June 11, 2002, Connell entered a plea of not guilty, together with a written plea of not guilty by reason of insanity. [Doc. 5, Ex. B.] Connell's criminal trial began on October 29, 2002 and it ended in a mistrial. [Doc. 5, Ex. C.] The State of Ohio retried Connell on the same charge; the second trial began on May 27, 2003. [Doc. 5, Ex. D.] At the conclusion of the second trial, the jury convicted Connell of involuntary manslaughter.[1/] [*Id.*]

On July 23, 2003, the trial court sentenced Connell to a total of 12 years in prison, 9 years for the involuntary manslaughter of the first degree conviction and 3 years for the gun specification. [Doc. 5, Ex. E.] The trial court found that a sentence of 9 years was appropriate because (1) Connell committed felonious assault, which is one of the more serious felonies; (2) Connell did not seek medical help for her husband after she shot him; (3) the victim sustained two gunshot wounds, indicating that Connell consciously discharged a weapon on two separate occasions; and (4) Connell showed no remorse or stress in the hours following the shooting. [*Id.*]

On August 20, 2003, Connell, through counsel, timely appealed her conviction and sentence, [Doc. 5, Ex. F], presenting two assignments of error to the state appellate court: (1) the trial court erred by denying Connell's Crim. R. 29 motion for acquittal on the basis that the State had not proven venue beyond a reasonable doubt; and (2) the trial court erred by refusing to admit expert evidence about the alleged victim's drug use at the time of his death and the propensities which flowed

---

[1/] Connell was indicted for aggravated murder and murder, along with a firearm specification. [Doc. 5, Ex. A.] The jury acquitted Connell of the aggravated murder charge and deadlocked on the murder charge. [Doc. 5, Ex. D.] Connell was found guilty of first degree involuntary manslaughter with felonious assault as the underlying predicate offense and of third degree involuntary manslaughter with aggravated menacing as the underlying predicate offense. Because these were allied offenses, conviction was only entered for involuntary manslaughter of the first degree, as well as for the firearm specification. [Doc. 5, Ex. E.]

-4-

Case No. 3:06-CV-2128
Gwin, J.

therefrom, thus denying Connell the right to adduce evidence supporting her affirmative defense of self-defense. [Doc. 5, Ex. G at 2.] The state court of appeals affirmed Connell's conviction and sentence after reviewing these assignments of error. *Connell*, 2005 WL 1492058, ¶ 31.

Connell, through new appellate counsel, timely appealed the decision of the state court of appeals to the Supreme Court of Ohio, raising the following propositions of law: (1) appellate counsel is ineffective when he fails to argue that the trial court erred by imposing a non-minimum prison term on the defendant without findings from the jury; and (2) a trial court may not impose non-minimum, maximum or consecutive prison terms in the absence of jury findings of the factors set forth in R.C. § 2929.14(B), R.C. § 2929.14(C), and R.C. § 2929.14(E). [Doc. 5, Ex. L at 2.]

On November 23, 2005, the Supreme Court of Ohio accepted the appeal and ordered the cause to be held for the decisions in Supreme Court Case Nos. 04-1771, *State v. Quinones* and 04-1568, *State v. Foster*. [Doc. 5, Ex. M.] On May 3, 2006, the Supreme Court of Ohio dismissed the case *sua sponte*, stating that the appeal was "improvidently accepted pursuant to the rule relating to ineffective assistance of counsel announced in *Strickland v. Washington* (1984), 466 U.S. 668." [Doc. 5, Ex. N.]

Previously, on September 22, 2005, Connell, with the assistance of her new appellate counsel, filed an application to reopen her direct appeal with the state court of appeals, alleging that her former appellate counsel provided ineffective assistance by failing to challenge the constitutionality of Connell's sentence under the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). [Doc. 5, Ex. O.] On November 28, 2005, the state court of appeals denied Connell's application to reopen her appeal, stating that it had previously "rejected the application of *Blakely* to Ohio's sentencing scheme in cases where the trial court, faced with a range of possible sentences,

Case No. 3:06-CV-2128
Gwin, J.

imposes a greater than minimum sentence on an offender after applying at least one of the factors set forth in R.C. [§] 2919.14(B)." [Doc. 5, Ex. P.]

Connell did not appeal the denial of her application to reopen to the Supreme Court of Ohio. Instead, she filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court [Doc. 1.] With her petition, Connell raises the following two grounds for relief:

(1) Petitioner's right to due process of law, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States of America, was violated when the trial court usurped the role of the jury by imposing a non-minimum sentence based upon findings of fact which were not determined by the jury nor admitted by Petitioner; and

(2) Petitioner's right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States of America, was violated when appellate counsel failed to raise the issue on appeal that the trail judge usurped the role of the jury by making findings of fact in order to sentence petitioner to a higher-than-minimum penalty.

After Respondent Warden Pat Andrews filed a Return of Writ on February 20, 2007, [Doc. 5], Magistrate Judge James S. Gallas issued a Report and Recommendation in which he recommended that Petitioner Connell's habeas petition be denied. [Doc. 15.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 20.] The Court considers the Petitioner's objections below.

**II. Legal Standard**

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made. *See* 28 U.S.C. § 636(b)(1). As noted in Magistrate Judge Gallas's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance. Parties

Case No. 3:06-CV-2128
Gwin, J.

waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams*, 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir. 2000).

-7-

Case No. 3:06-CV-2128
Gwin, J.

waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams*, 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir. 2000).

Case No. 3:06-CV-2128
Gwin, J.

*C. Ineffective Assistance of Counsel*

To prevail on a habeas claim that counsel's assistance was constitutionally ineffective, a movant must satisfy a two-pronged test. First, he must show that counsel's performance was deficient by demonstrating that "counsel made errors so serious that he was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating this charge, the court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [, keeping in mind] that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. Judicial scrutiny of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.* at 689.

Second, the movant must show that counsel's deficient performance prejudiced the defendant by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* at 687. A habeas petitioner meets the second prong of the test by establishing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

*D. Procedural Default*

A claim may become procedurally defaulted if a petitioner fails to comply with a state procedural rule in presenting his claim to the appropriate state court. *See Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). In deciding whether a petitioner's federal claim is procedurally

-8-

Case No. 3:06-CV-2128
Gwin, J.

defaulted because of his noncompliance with a state procedural rule, the Sixth Circuit examines four factors: (1) whether there is a state procedural rule that applies to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts actually enforced the procedural rule at issue; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the petitioner did not comply with a state procedural rule that constituted an adequate and independent state ground, whether the petitioner has demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *See Buell v. Mitchell*, 274 F.3d 347, 348 (6th Cir. 2001); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

A habeas court will consider the merits of a federal claim that was procedurally defaulted in the state court only if "the petitioner can show cause to excuse his failure to present the claim[] appropriately in state court[] and actual prejudice as a result." *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). To demonstrate cause, the petitioner must establish "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, the petitioner must show "that the errors at trial 'worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citing *United States v. Frady,* 456 U.S. 152, 170 (1982)). Under this standard, prejudice does not occur unless the petitioner demonstrates that there is "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell,*

Case No. 3:06-CV-2128
Gwin, J.

320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

### III. Analysis

*A. First Ground for Relief: Violation of Sixth Amendment Rights by Imposing a Non-Minimum Sentence Based Upon Findings That Were Not Determined by the Jury or Admitted by the Petitioner*

Petitioner Linda Connell argues that the trial court violated her Sixth Amendment rights when it imposed a non-minimum sentence based upon findings that were not determined by the jury or admitted by Connell. Although Connell's sentence was enhanced by additional non-jury findings in violation of her Sixth and Fourteenth Amendment rights to trial by jury, the *Blakely* error is harmless because it does not affect the outcome of the case. Therefore, Connell's petition for habeas corpus relief must be denied.

1. Procedural Default of the First Ground for Relief

A threshold issue is whether Petitioner Connell has procedurally defaulted her *Blakely* claim because she never presented it on direct appeal and it was considered for the first time by the Supreme Court of Ohio.

The Supreme Court of Ohio has held that the issue of waiver or procedural default does not apply to a defendant who was sentenced before the *Blakely* decision was announced and who did not specifically object to the constitutionality of her sentence pursuant to *Apprendi* or its progeny at trial and did not raise this issue in the court of appeals. See *State v. Foster*, 845 N.E.2d 470, 483 (Ohio 2006). The defendant in *Foster* was sentenced in 2003, a year before the Supreme Court handed down the *Blakely* decision. The Supreme Court of Ohio considered the defendant's claim that his sentence was unconstitutional despite the fact that the defendant had not previously presented this claim on appeal, noting that "Foster could not have relinquished his sentencing objections . . . when no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to redefine

Case No. 3:06-CV-2128
Gwin, J.

'statutory maximum.' . . . . Furthermore, *Blakely*'s . . . holding has been applied retroactively to cases pending on direct appeal in states that have found it applicable to their statutes." *Id.* at 483-84.

Further, the Supreme Court of Ohio has held that the waiver rule announced in *State v. Awan*, 489 N.E.2d 277 (Ohio 1986) that failure to raise the issue of the constitutionality of a statute or its application at the time of trial constitutes a waiver and therefore the Supreme Court of Ohio need not consider this issue for the first time on appeal is discretionary. *In re M.D.*, 527 N.E.2d 286, 288 (Ohio 1988). Thus, the Supreme Court of Ohio concluded that "even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.*

Because the procedural rule barring consideration of Petitioner Connell's *Blakely* claim is discretionary, Connell has not procedurally defaulted this claim and the Court will consider it on the merits.

2. Merits Consideration of the First Ground for Relief

The Supreme Court of Ohio disposed of Petitioner Connell's appeal based only on her second claim of ineffective assistance of counsel; it did not address her first claim that her sentence was unconstitutional because it was not based on findings determined by the jury or on facts admitted by the Petitioner. Where there is no state court adjudication of the merits of a claim, a district court typically reviews *de novo* questions of law and mixed questions of law and fact. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *see also Crotts v. Bradshaw*, No. 1:06-cv-2519, 2007 WL 3283841, at *14 (N.D. Ohio Oct. 30, 2007).

When the trial court sentenced Petitioner Connell, Ohio's legislative sentencing plan mandated that the trial court impose the shortest available prison term unless: (1) the offender was serving a

-11-

Case No. 3:06-CV-2128
Gwin, J.

prison term at the time of the offense or the offender previously had served a prison term; or (2) the court found on the record that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender or others. *See* R.C. § 2929.14(B).

Under R.C. § 2903.04(A), Connell's conviction for first degree involuntary manslaughter carried with it a penalty range of 3 to 10 years. *See* R.C. § 2929.14(A)(1). Connell was sentenced to 9 years. The maximum sentence the trial court could have imposed without any additional findings was 3 years. *See Blakely*, 542 U.S. at 303-304. Thus, Connell's sentence was enhanced by additional non-jury findings in violation of her Sixth and Fourteenth Amendment rights to trial by jury. *See Cunningham v. Cal.*, 549 U.S. 270, 290 (2007) ("If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied."); *Foster*, 845 N.E.2d at 490 (holding that R.C. § 2929.14(B) was unconstitutional because "a court is not authorized to exceed the shortest prison term unless it makes the additional findings").

This sentencing error is subject to harmless error review. *See Wash. v. Recuenco*, 548 U.S. 212, 222 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."). The Sixth Circuit has followed the Supreme Court in utilizing harmless error analysis in post-*Apprendi* cases implicating a defendant's "right to have a jury find, beyond a reasonable doubt, all facts which establish the maximum sentence that can be imposed by a trial court." *United States v. Kuehne*, 547 F.3d 667, 681 n.4 (6th Cir. 2008); *see also United States v. McBride*, 434 F.3d 470, 473 (6th Cir. 2006) ("When a defendant preserves a potential *Blakely* error, this Court reviews for harmless error.").

Case No. 3:06-CV-2128
Gwin, J.

Under the harmless error standard, an error is not harmless if a federal court reviewing a state court judgment under 28 U.S.C. § 2254 has "grave doubt" as to the harmlessness of the error; in such circumstances, the court should "treat the error as if it affected the verdict." *O'Neal v. McAnich*, 513 U.S. 432, 436 (1995). Although *Blakely* error arises from the *lack* of a jury verdict with respect to a sentencing factor, it can nevertheless be harmless. *See Recuenco*, 548 U.S. at 222. In determining the harmlessness of an error in a case *without* a jury verdict, a court considers the entire record and decides whether it can conclude "with fair assurance" that a reasonable jury *would* have found beyond a reasonable doubt that the defendant committed the acts establishing the challenged sentencing factor, or if it is in "grave doubt" as to this question. *Cf. Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir.2003) (applying this standard when considering, on habeas review, whether a trial court's failure to instruct a jury on an element of an offense constituted harmless error). "While the burden of persuasion on harmless error review falls on a petitioner, [s]he need not prove that the error was outcome-determinative; instead [s]he must merely remove any assurances that the error did not affect the outcome." *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005).

In this case, the only sentencing error occurred when the trial court made findings on the record as to why sentencing Petitioner Connell to 3 years in prison would demean the seriousness of the offense. The trial court did so because, under R.C. § 2929.14(B)(2), it was "not authorized to exceed the shortest prison term unless it ma[de] the additional findings," *Foster*, 845 N.E.2d at 490, concerning "the seriousness of the offender's conduct" and "future crime by the offender or others," R.C. § 2929.14(B)(2). *Foster* altered the requirement "that the court make findings of fact before imposing . . . more than the minimum term on an offender who has never served a prison term." *State v. Mathis*, 846 N.E.2d 1, 6 (Ohio 2006). It did not, however, change the fact that the

-13-

Case No. 3:06-CV-2128
Gwin, J.

seriousness of the offender's conduct continues to be a sentencing consideration, as stated in R.C. § 2929.12.[2/] Thus, although "the trial court is no longer compelled to make findings and give reasons at the sentencing hearing" following *Foster*, "nevertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include . . . R.C. [§] 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *Mathis*, 846 N.E.2d at 8.

Since the seriousness of the offense was a consideration in determining Petitioner Connell's sentence pre-*Foster* and would remain a consideration post-*Foster*, and this was the only factor utilized in sentencing, the Court can conclude "with fair assurance" that a reasonable jury would have found beyond a reasonable doubt that Connell committed the acts establishing the challenged sentencing factor. Connell has also not removed any assurances that the *Blakely* error did not affect the outcome of the case. As a result, any *Blakely* error present in this case is harmless

**B. Second Ground for Relief: *Ineffective Assistance of Counsel***

Petitioner Connell argues that her appellate counsel was ineffective because he failed to raise the issue of the *Blakely* error on appeal, thereby violating Connell's Sixth and Fourteenth Amendment rights. Because the Supreme Court of Ohio, in considering the Petitioner's case, correctly identified the relevant clearly established federal law, as determined by the Supreme Court, and did not apply this case law unreasonably to the facts of the Petitioner's case, Connell's petition for a writ of habeas corpus on the basis of ineffective assistance of counsel must be denied.

---

[2/] R.C. § 2929.12 states that in exercising its discretion in sentencing, the trial court "shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism." This section also permits the trial court to "consider any other factors that are relevant to achieving those purposes and principles of sentencing." *Id.*

-14-

Case No. 3:06-CV-2128
Gwin, J.

The Supreme Court of Ohio addressed this ground for relief when ruling upon the Petitioner's appeal, stating that the appeal had been "improvidently accepted pursuant to the rule relating to ineffective assistance of counsel announced in *Strickland v. Washington* . . . ." [Doc. 5, Ex. N.] Generally, when a state court "decides a constitutional issue by form order or without extended discussion," the habeas court must conduct an independent review of the record and applicable law. *Harris v. Stovall*, 212 F.3d 940, 943 n. 1 (6th Cir. 2000). The ultimate inquiry remains the AEDPA standard of whether the state court result is contrary to or unreasonably applies clearly established federal law. *Id.* at 943.

To prevail on a habeas petition involving a claim of ineffective assistance of counsel, a petitioner must demonstrate that the state court either made a decision that was contrary to the Supreme Court's holding in *Strickland v. Washington* or unreasonably applied *Strickland* to the facts of the petitioner's case. *See* 28 U.S.C. § 2254(d). In this case, the Supreme Court of Ohio correctly identified *Strickland* as the federal law on point. Furthermore, Petitioner Connell cannot show that the state court was unreasonable in its application of *Strickland* to her case.

The Petitioner could likely satisfy the first prong of *Strickland* – objective deficiency of counsel's performance – because competent counsel would have presented an assignment of error asserting that Connell's greater-than-minimum sentence violated *Blakely*. Connell could not meet the second requirement of the *Strickland* standard, however, because she could not demonstrate that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687. First, the Supreme Court of Ohio still considered Connell's *Blakely* claim on appeal despite her appellate counsel's failure to present it. Second, as explained above, the *Blakely* error in this case was harmless; thus, the result

Case No. 3:06-CV-2128
Gwin, J.

of this case would not have been different if Connell's appellate counsel had presented the *Blakely* claim on appeal. Connell's petition for a writ of habeas corpus on the basis of ineffective assistance of counsel must therefore be denied.

### IV. Conclusion

For the reasons stated above, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Gallas and **DENIES** Petitioner Connell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. 2253(c); Fed. R. App. P. 22(b) as to both grounds for relief.

IT IS SO ORDERED.

Dated: March 3, 2009              s/ *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE